No. 54,520

CLAY L. WIRT, JOHN J. FRANKE, JR., and ROBERT C. BACON, as the Board of County Commissioners of the County of Johnson and as the County Board of Equalization of the County of Johnson; DONALD J. CURRY, as the County Clerk of said County; EDNA C. CRAIG, as the County Treasurer of said County; and PRATHER H. BROWN, JR., as the County Appraiser of said County, *Appellants*, v. ROBERT C. ESREY, as Receiver, and CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION, *Appellees*.

(662 P.2d 1238)

Opinion filed April 29, 1983.

*Bernis G. Terry*, assistant county counselor, argued the cause, and *Lyndus A. Henry*, county counselor, was with him on the briefs for the appellants.

*John Anderson, Jr.*, of Anderson, Granger, Nagels & Lastelic, Chartered, of Overland Park, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action arising from a dispute over the assessment of an apartment complex located in Johnson County for ad valorem tax purposes. As the opinion will demonstrate, most of the issues presented in the trial court and on appeal involve questions of jurisdiction, procedure, and the scope of

appellate review of decisions of the taxing authorities rather than error in the assessment of the property.

In determining the case, the Honorable Lewis C. Smith filed a well-reasoned, comprehensive memorandum decision which sets forth at length the decisive facts, outlines the issues, and states the considerations for the court's decision and judgment. We include here those portions of the memorandum decision involving issues which have been raised on the appeal.

## MEMORANDUM DECISION

Statement of Facts:

1. The real estate involved herein consists of land and improvements comprising an apartment complex located at 87th Street and Mastin in Overland Park, Kansas, and commonly known as The Clines Apartments.

2. Appellee, Capitol Federal Savings & Loan Association (Capitol Federal) was mortgagee of the Clines property and ultimately through foreclosure became owner.

3. On April 9, 1976, Robert C. Esrey, theretofore appointed by the District Court of Johnson County, Kansas, in Case No. 49,941, as receiver and agent for the land and improvements described as The Clines Apartments, together with Capitol Federal, filed an equalization appeal in Docket No. 76-1 to the County Board of Equalization (County Board) of Johnson County, Kansas, from the assessment of said property for the year 1976.

4. On April 21, 1976, the equalization appeal was heard by said County Board. As a result of taxpayer's appeal, a change of assessment was made upon finding that an error had been made in computing the square footage of the improvement. As a result thereof, the County Board made and entered its decision in said equalization appeal on May 12, 1976, reducing the valuation of the land from $251,600 to $223,200, and the valuation of the improvements from $2,096,800 to $1,821,000 or a total reduction of $2,348,400 to $2,044,400 (*i.e.* reduction of 13%).

5. On June 4, 1976, Capitol Federal and Robert C. Esrey, as receiver, filed an appeal to the State Board of Tax Appeals (BOTA) sitting as the State Board of Equalization, alleging the valuation on the subject properties should have been reduced by an additional amount.

6. On August 11, 1976, evidence was presented before BOTA by all the parties involved herein and the Board, having con-

cluded the hearing, took the appeal under advisement, granting the parties leave to submit suggested findings of fact and requested conclusions of law.

7. On or about January 5, 1976, Capitol Federal served by mail its amended petition and cross-petition adding a *tax protest* count relating to ad valorem taxes for the years 1970, 1971, 1972, 1973, 1974, and the first half of 1975 in its then pending action for foreclosure involving The Clines Apartments (Case No. 49,941). Capitol Federal's amended petition asserted a claim in the District Court of Johnson County, Kansas, for refund of taxes paid under protest for the first half of 1975 and for the said prior years. The amended petition and cross-petition were brought pursuant to K.S.A. 79-2005.

8. On August 17, 1976, the District Court of Johnson County, Kansas, concluded that said *tax protest* failed and, sustaining the motion of the county, dismissed the amended petition for failure to state a claim upon which relief could be granted.

9. On September 14, 1976, the taxpayer, Capitol Federal, filed a memorandum in the *equalization appeal* pending before BOTA. The taxpayer, for the first time in the equalization proceeding, sought a refund of taxes paid under protest. The request for the refund was brought pursuant to K.S.A. 74-2439 and K.S.A. 79-1701 *et seq.*

10. On or about February 3, 1977, BOTA made and entered its order, copies of which were mailed to the parties on February 8, 1977, which order described the issues as follows:

"5. That the issues of this appeal are:

"(1) Is the taxpayer entitled to further reduction in the fair market value of the property here in question greater than the reduction granted to it by the County Board of Equalization after there being conducted a reappraisal of the property?

"(2) Is the taxpayer eligible for a refund of taxes pursuant to K.S.A. 1975 Supp. 79-1701 et seq. due to clerical error for the year 1975?"

11. With regard to the first issue, as articulated by BOTA, it was determined:

"13. That no substantial, competent evidence which would support further reduction in the fair market value was presented to this Board which would permit it to alter the decision of the Johnson County Board of Equalization."

Accordingly, BOTA denied the taxpayer's appeal from the determination of the County Board.

12. With regard to the second issue, as articulated by BOTA, it was determined:

"14. That this Board does have the power and authority to correct clerical errors as hereinbefore outlined in Paragraph 8. Further, that the record shows substantial differentiation between figures used to establish the 1976 value, the reappraisal having been made and those figures used to establish the 1975 fair market value. That, therefore, the taxpayer is entitled to relief on this claim of error that the County has had, and has taken, the opportunity to make its views known as to this Board's authority on this issue. Therefore, the Motion for Refund is sustained."

13. With regard to the second issue, BOTA further determined:

"15. That the 1976 appraisal valuation presently placed against the land and improvements is correct as determined by the County Board of Equalization of Johnson County, Kansas, and was made in conformity with the applicable provisions of the Kansas Statutes Annotated. And, that the tax levied upon this property for the year 1975 *was erroneously calculated not having taken into consideration the true and correct square footage of the improvements located upon the property* here in question and, as such, the taxes levied for 1975 ought to be computed based upon these corrected figures as was the 1976 valuation. *Any refund due and owing to the taxpayer should then be made or credited to succeeding tax liabilities.*"

14. On March 1, 1977, the receiver served a copy of a notice of appeal to the district court of Johnson County and filed the original with BOTA. On the same day he served and filed an application for rehearing contending that the BOTA should have ordered a refund of taxes paid for the years 1971 through 1974; and asking BOTA to grant a rehearing on the question of uniform and equal assessment as it relates to the subject properties.

15. On March 8, 1977, Johnson County filed a motion for a rehearing concerning Paragraphs 14 and 15 of said order and the order of refund for the tax year 1975.

16. On March 10, 1977, Johnson County served and filed a notice of appeal from that part of the order of BOTA whereby BOTA ordered Johnson County to refund or credit 1975 real estate taxes, said appeal being docketed as Case No. 68,767 in the District Court of Johnson County, Kansas.

17. On March 17, 1977, BOTA made and entered an order granting a limited rehearing pertaining to the ability of BOTA to refund and the amount due and owing.

18. On April 6, 1977, Robert C. Esrey, as receiver, and Capitol Federal filed a notice of appeal in the District Court of Johnson County from that part of the order of BOTA dated February 3,

1977, and the order of BOTA denying rehearing on said matter dated March 17, 1977, wherein BOTA denied taxpayer's relief in the application for relief from the assessment of The Clines Apartments. This appeal was docketed as Case No. 69,248.

19. On May 24, 1977, a hearing was held, pursuant to the order for limited rehearing before BOTA. On August 3, 1977, BOTA made and entered an order wherein BOTA, affirming its determination in the prior order dated February 3, 1977, further determined:

"1. That the 1976 appraised valuation presently placed against the land and improvements is correct as determined by the County Board of Equalization of Johnson County, Kansas, and was made in conformity with the applicable provisions of the Kansas Statutes Annotated. This reaffirms our findings in the prior Order dated February 3, 1977.

"2. That this Board does have the power and authority to correct clerical errors, as outlined in the prior Order in this docket, and that the records show substantial differentiation between figures used to establish the 1976 value, a reappraisal having been made, and those figures used to establish the fair market value of this complex at the time of the completion of its construction. That, therefore, the taxpayer is entitled to relief on their claim of error as admitted by the County, and that the County has had, and has taken, the opportunity to make its views known on the subject of this Board's authority to make such corrections and issue refunds.

"3. That as a finding of fact, after having reviewed the property cards maintained by Johnson County, Kansas, reflecting the completion date of the property in question, this Board determines that said property was completed for purposes of taxation as of the 1st day of January, 1974.

"4. That the clerical error complained of by the appellant is one which has applicability solely to the apartment complex in its completed form, which would be during tax years 1974 and 1975.

"5. That this Board did not with specificity determine in its prior Order the tax years to which the clerical error complained of would have reference.

"6. That this Board now determines that a refund is due and owing to the taxpayer for the tax levied upon the property for the years 1974 and 1975 (both taxes having been paid in 1975) was erroneously calculated not having taken into consideration the true and correct square footage of the improvements located upon the property here in question and, as such, the taxes levied for 1974 and 1975 should be recomputed based upon the correct figures as was the 1976 valuation. Any refund due and owing to the taxpayer should then be made or credited to the succeeding tax liabilities."

20. On September 2, 1977, Robert C. Esrey and Capitol Federal filed a notice of appeal in the District Court of Johnson County, Kansas, which was docketed as Case No. 72,082. Appellants appealed from the order of BOTA dated August 3, 1977, wherein BOTA denied taxpayer relief from the assessment of

The Clines Apartments. Taxpayer also appealed from that part of BOTA's order which denied a refund on the taxes paid for the years 1972 and 1973 based upon clerical error admitted by the assessor of Johnson County.

21. On September 7, 1979, Johnson County filed its notice of appeal in the District Court of Johnson County, Kansas, docketed as Case No. 72,139. Johnson County appeals from that part of BOTA's order dated August 3, 1977, wherein BOTA determined that a refund was due and owing for taxes levied for 1974 and 1975 and ordered Johnson County to refund or credit the 1974 and 1975 real estate taxes. Johnson County also appeals from that part of BOTA's order dated February 3, 1977, wherein BOTA determined that a refund was due and owing for taxes levied in 1975, and ordered Johnson County to refund or credit same.

22. On June 20, 1978, Administrative Judge of the District Court of Johnson County, finding that the parties had stipulated that the said cases numbered 68,767, 69,248, 72,082, and 72,139 involved certain common questions and that said matters should be consolidated for all further proceedings, made and entered an order consolidating said cases in Court No. 6 of the District Court of Johnson County, Kansas.

23. In a collateral proceeding entitled *In re Tax Protest of Rice,* 228 Kan. 600, 620 P.2d 312 (1980), taxpayers Ronald and Julia Rice made payment, under protest, of several years' taxes on Shawnee County real estate. The taxpayers timely perfected an appeal to BOTA which granted relief to the taxpayers for the years 1973 through 1976. On appeal to the Shawnee County District Court, the county, relying upon the Johnson County District Court case, *Capitol Federal Savings & Loan Association v. Western Lumber and Building Supply, Inc.,* Case No. 49,941, argued that delinquent taxes could not be protested under K.S.A. 79-2005. The Shawnee District Court disagreed with this contention, and in a split decision, the Supreme Court of Kansas agreed, finding that it is the prerogative of the legislature to prohibit the protesting of delinquent taxes and the statute (79-2005) would not support such a strained construction. Therefore, the opinion rendered by the Honorable Buford L. Shankel of Johnson County District Court was effectively overruled, though not through the direct appeal process.

## ISSUES

Based upon the foregoing facts, a number of procedural and substantive issues have been raised:

I.  Whether BOTA had jurisdiction to consider the taxpayer's motion for refund of taxes paid under protest.

A. Whether the doctrine of res judicata precluded BOTA from considering the tax refund claim alleged by the taxpayer at a time when the same claim was pending before a court of competent jurisdiction and prior to determination by said administrative board, the court, in Case No. 49,941 rendered judgment denying relief to the taxpayer.

B. Whether this court, to avoid manifest injustice, should vacate or set aside the decision rendered in Case No. 49,941.

C. Whether BOTA, sitting as the State Board of Equalization pursuant to K.S.A. 79-1409 can consider issues concerning a tax refund in accordance with K.S.A. 79-1701 *et seq.*

D. Whether taxpayer's claim for refund of taxes paid under protest in accordance with K.S.A. 74-2439 and 79-1701 *et seq.* was first required to be presented to the Board of County Commissioners.

II.  Whether BOTA's order of refund was made on the basis of substantial and competent evidence.

. . . .

IV.  Whether BOTA's order sustaining the findings of the County Board was unreasonable, arbitrary or capricious.

## DISCUSSION

I.  Jurisdiction

A.  The dismissal of taxpayer's amended petition in Case No. 49,941 operated as an adjudication "on the merits" within the meaning of K.S.A. 60-241 and as such it was conclusive as to any other action or proceeding involving the same cause of action, subject only to the right to have the same vacated or set aside in a proper proceeding.

The first issue is concerned with whether res judicata applies to the factual setting presented herein for the reason that at the time BOTA issued its order granting the taxpayer a refund of protested taxes, a previous decision had been rendered by a court of competent jurisdiction involving the same facts, same parties and same issues (Case No. 49,941). In asserting the taxpayer was precluded from raising the tax protest claim before

BOTA, the County focuses on the taxpayer's amended petition in the foreclosure proceeding (Case No. 49,941) and the procedural avenue employed by the taxpayer. As previously set forth in the facts, taxpayer's amended petition was filed pursuant to K.S.A. 79-2005, which provides:

"(2) Every taxpayer protesting the payment of taxes, within thirty (30) days after filing his or her protest shall either commence an action for the recovery thereof in some court of competent jurisdiction, or file an application with the state board of tax appeals . . . ."

It is argued by the County that within thirty days after the payment of the taxes under protest, taxpayer made an election under the statute to commence an action in the district court by filing an amended petition rather than filing an application with BOTA. Since the taxpayer elected its remedy under K.S.A. 79-2005 to commence the judicial proceeding, it is asserted that said action was res judicata as to BOTA proceedings.

The taxpayer approaches the res judicata issue from a different perspective. In an attempt to escape the application of K.S.A. 79-2005, it is contended that a taxpayer has at least two routes in which to obtain relief from BOTA. It is asserted that a taxpayer can proceed under the remedies provided by K.S.A. 79-2005 *or* choose to seek relief to BOTA under separate remedial statutes—K.S.A. 74-2439 and 79-1701 *et seq.* In the present case, the taxpayer chose to take both courses of action, seeking the same relief from the two tribunals. Therefore, taxpayer argues that the county's contentions with regard to K.S.A. 79-2005 are without merit because the taxpayer did not appear before BOTA by way of K.S.A. 79-2005. From this procedural vantage point the taxpayer argues that the doctrine of res judicata is not applicable to the present situation.

It appears that both parties have placed considerable emphasis on the particular statute used in obtaining relief and arrive at conflicting conclusions. Indeed, the county emphasizes the taxpayer was properly before the District Court of Johnson County in Case No. 49,941 in accordance with K.S.A. 79-2005. The appellees' remedies were, therefore, exhausted by the statute and res judicata precluded the bringing of the tax protest issue before BOTA. Likewise, appellees seek to elude the application of res judicata by arguing they proceeded under separate remedial statutes. However, the parties fail to recognize that applica-

tion of the doctrine of res judicata is unconcerned with the procedural avenue employed to acquire jurisdiction in a particular tribunal. On the contrary, the doctrine prevents a second assertion of the *same claim or cause of action. Goetz v. Board of Trustees,* 203 Kan. 340, 454 P.2d 481 (1969). Thus, regardless of which statute the taxpayer used to proceed to BOTA on its tax protest issue, the fact remains that the same facts, same parties, and same issues had previously been litigated before a court of competent jurisdiction.

Moreover, it is a well-established rule that where a court has jurisdiction of the parties to an action and of the subject matter thereof and renders a judgment within its competency, such judgment is final and conclusive, unless corrected or modified on appeal. *McFadden v. McFadden,* 187 Kan. 398, 402, 357 P.2d 751 (1960). It is further a fundamental rule that where a court of competent jurisdiction renders a judgment within its competency, even if erroneous, that judgment is final and conclusive unless corrected or modified on appeal, and it may not be attacked collaterally. *In re Estate of Johnson,* 180 Kan. 740, 308 P.2d 100 (1957). In the present case, without considering whether taxpayer could proceed to BOTA under the separate remedial statutes, once the judgment was rendered by the District Court of Johnson County in Case No. 49,941 it became a final order and could not be attacked collaterally in an administrative proceeding. The proper procedure was for the taxpayer to seek reversal of the judgment through the appeal process.

The remaining procedural obstacle which would prevent the application of the doctrine of res judicata is if the dismissal rendered in Case No. 49,941 was not "on the merits." As taxpayer properly points out in a supplemental brief to the court:

"If a judgment of dismissal is on the merits, it operates under the doctrine of res judicata to preclude subsequent relitigation of the same cause of action; if it is not on the merits, it does not so operate."

46 Am. Jur. 2d, Judgments § 479. Thus, the novel issue before this court is whether a dismissal for failure to state a claim upon which relief can be granted under K.S.A. 60-212(*b*)(6) is one "on the merits," thereby precluding subsequent relitigation.

Taxpayer contends that the Kansas Supreme Court has previously decided this issue in the case *Burris v. Burris,* 140 Kan. 208, 34 P.2d 127 (1934). In that case the court held that a ruling

on a demurrer to a pleading did not operate to bar a new suit or cause of action. Without question, a 60-212(*b*)(6) motion is the modern equivalent to a general demurrer. However, the holding in *Burris* can clearly be limited to its facts and has no precedential effect on the case presented here. First, in *Burris*, unlike in this case, the trial court did not enter judgment against the plaintiff other than to sustain the demurrer. Moreover, the plaintiff in *Burris* was permitted to dismiss his suit without prejudice and within the appropriate time filed a second cause of action.

Rather than seeking to resolve this issue through resort to case law decided in the days of code pleading, the court will look to the modern Code of Civil Procedure to resolve this issue.

Case No. 49,941 was dismissed by the District Court of Johnson County upon motion by the county pursuant to K.S.A. 60-212(*b*). Although it is frequently unclear whether the court has dismissed under 60-212(*b*)(1) or 60-212(*b*)(6), in the present case the court concluded that the facts, as alleged in the amended petition, were insufficient to support a claim for relief. Therefore, clearly the court rendered the decision pursuant to 60-212(*b*)(6)—failure to state a claim. The basic difference among the various 60-212(*b*) motions is that 60-212(*b*)(6) alone necessitates a ruling on the legal sufficiency of plaintiff's claim; the others deal with procedural defects. Because of this, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. In Case No. 49,941, the court considered the legal sufficiency of taxpayer's case and concluded that even if each allegation were proven, as a matter of law, "a taxpayer may not protest the payment of taxes after the taxes have become delinquent." Although the decision was later declared to be an erroneous ruling of law (*In re Tax Protest of Rice*, 228 Kan. 600), there is nothing in the decision to indicate the dismissal was rendered without prejudice, thereby precluding its prospective application.

This court must, therefore, conclude that the judgment in Case No. 49,941 was "on the merits," with res judicata effect. In support of this conclusion, the court relies on the literal language of K.S.A. 1982 Supp. 60-241(*b*), which states in relevant part:

"Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and *any dismissal not provided for in this section*, other than a

dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under K.S.A. 60-219, *operates as an adjudication upon the merits.*" (Emphasis supplied.)

The trial court's dismissal of taxpayer's amended petition in Case No. 49,941 falls directly under the wording of K.S.A. 1982 Supp. 60-241(*b*).

Additionally, numerous federal cases have held that a dismissal for failure to state a claim operates as an adjudication on the merits. See, *e.g., Teltronics v. L M Ericsson Telecommunications,* 642 F.2d 31 (2d Cir. 1981); *Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884 (3rd Cir. 1977); *Exchange Nat. Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir. 1976); *Timberlane Lbr. Co. v. Bank of America, N.T.&S.A.,* 549 F.2d 597 (9th Cir. 1976); *Hubicki v. ACF Industries, Incorporated,* 484 F.2d 519 (3rd Cir. 1973); *Brennan v. Rhodes,* 423 F.2d 706 (6th Cir. 1970); *Weissinger v. United States,* 423 F.2d 795 (5th Cir. 1970); and see 2A Moore's Federal Practice, ¶ 12.09 (2d ed. 1968). Since all requirements for the application of res judicata are satisfied, the dismissal of appellees' first complaint is conclusive as to any other action or proceeding involving the same cause of action, subject only to the right to have the same vacated or set aside in a proper proceeding.

B.   In order to avoid manifest injustice the court finds that the decision reached in Case No. 49,941, only as it pertains to the dismissal of taxpayer's amended petition for refund of taxes, should be vacated and set aside in accordance with K.S.A. 60-260(*b*)(6).

The essential purposes of the taxation statutes are to furnish an adequate and sufficient remedy to the taxpayer in case of an illegal or unjust assessment for taxes and, at the same time, to provide an expeditious method by which the various branches of government affected can obtain the revenue necessary to their maintenance. Taxpayer had a remedy that was plain, simple, adequate, and complete by proceeding before the District Court of Johnson County pursuant to K.S.A. 79-2005. However, due to an erroneous ruling of law, the taxpayer was denied the right to fully litigate the legal merits of its claim. The court is cognizant of the fact that res judicata is a doctrine grounded on the idea that the finality of an authoritative determination serves the interests of society as well as the parties by bringing an end to litigation on

a claim. However, this factor must be weighed against the long-standing policy of deciding legal controversies "on their merits," coupled with the court's function to prevent manifest injustice whenever possible.

K.S.A. 60-260(*b*) reads in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

"(6) any other reason justifying relief from the operation of the judgment."

This rule, in its entirety, attempts to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts. Decisions under the parallel federal rule of civil procedure reflect the view that Rule 60 is to be "liberally construed . . . in order that judgments will reflect the true merits of a case." 11 Wright & Miller, Federal Practice and Procedure: Civil § 2852, p. 143 (1973). Likewise, the liberality with which Rule 60 (b) and particularly Clause 6 thereof should be applied is stated as follows in 7 Moore's Federal Practice, ¶ 60.27(1), p. 342 (2d ed. 1982):

"Like Rule 60(b) generally, clause (6) should be liberally applied to situations not covered by the preceding five clauses so that, giving due regard to the sound interest underlying the finality of judgments, the district court, nevertheless, has power to grant relief from a judgment whenever, under all the surrounding circumstances, such action is appropriate in the furtherance of justice."

In view of the foregoing principles, the court is of the opinion that application of K.S.A. 60-260(*b*)(6) to the facts of Case No. 49,941 requires the decision, as it pertains to taxpayer's amended petition for refund of protested taxes, should be set aside. The court reaches this decision so that the ultimate result will address the true merits of taxpayer's cause and substantial justice will be done.

C.  There exists no statutory provision which limits the Board of Tax Appeals, sitting as the State Board of Equalization, from considering a tax refund issue in accordance with K.S.A. 79-1701 *et seq.*

At the outset it should be noted that the power of an administrative board, like BOTA, to consider matters of taxation is limited as permitted by statute. It may review questions affecting

the assessment and valuation of property, and whether such assessment is uniform and equal within the province of article 11 section 1 of the Kansas Constitution. The question posed by the issue presented here concerns the court's inquiry into the jurisdiction of BOTA to grant a refund of taxes paid under protest. Johnson County contends that BOTA, sitting as the State Board of Equalization, did not have the statutory authority to refund the taxes in the equalization appeal, Docket No. 23-76-E. It is alleged by the county that there is no provision for a refund of taxes in an equalization appeal before the County Board or the State Board of Equalization.

As previously indicated in the statement of facts, this matter was brought to the attention of the County Board on April 21, 1976, and culminated in a decision to reduce the assessed valuation on taxpayer's property on May 12, 1976. The power of the County Board to do so is provided in K.S.A. 79-1602, which states that such boards shall:

"[M]ake such changes in the assessment of property as shall be necessary in order to secure uniform and equal assessment of all property.

. . . .

"The board shall hear and determine any appeal made by any taxpayer as to the assessment and valuation of any property in the county which may be made to the board by the owner of such property or his or her agent or attorney, and shall perform the duties hereinbefore set out in this section."

As the county properly points out, there is no provision for a refund in an equalization appeal before the County Board.

Thereafter, as previously pointed out, taxpayer appealed the decision of the County Board to BOTA in accordance with K.S.A. 79-1609. The jurisdiction of BOTA to sit as the State Board of Equalization is provided in K.S.A. 79-1409, which provides:

"The state board of tax appeals shall constitute a state board of equalization, and shall equalize the valuation and assessment of property throughout the state; and shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district, . . . and between the different counties of the state, and the property assessed by the director of property valuation in the first instance. And any person feeling aggrieved by the action of the county board of equalization may, within forty-five (45) days after the decision of said board, appeal to the state board of equalization for a determination of such grievance."

The county submits that since K.S.A. 79-1409 contains no provision authorizing a refund of taxes paid under protest with respect

to the State Board of Equalization, no such authority exists. Viewing this statute in isolation, the county is quite correct in its assertion. However, in construing statutes the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *Rogers v. Shanahan,* 221 Kan. 221, 565 P.2d 1384 (1976); *Harris v. Shanahan,* 192 Kan. 629, 390 P.2d 772 (1964).

The general enumerated powers of BOTA are provided in K.S.A. 74-2439, which provides:

"Except as otherwise provided by law, the state board of tax appeals shall have the following powers and duties:

"(a) Constituting, sitting and acting as the state board of equalization as provided in K.S.A. 79-1409;

. . . .

"(d) correcting errors and irregularities under the provisions of article 17 of chapter 79 of Kansas Statutes Annotated; . . ."

Clearly, there is nothing in K.S.A. 79-1409 which limits the above-cited powers of BOTA. There exists no statutory "line of demarcation" between BOTA's power to act as a state board of equalization and its power to correct errors provided for in article 17 of chapter 79.

The correction of errors referred to in subsection (d) of K.S.A. 74-2439 is in reference to K.S.A. 79-1702. K.S.A. 79-1702, employed by BOTA in this case to order a refund to taxpayer, provides in part:

"If any taxpayer or any municipality or taxing district shall have a grievance not remediable under the provisions of K.S.A. 79-1701 or 79-1701a, or amendments thereto, or which was remediable thereunder and reported to the proper official or officials within the time prescribed but which has not been remedied by such official or officials, such grievance may be presented to the state board of tax appeals and if it shall be satisfied from competent evidence produced that there is a real grievance, it may direct that the same be remedied either by canceling the tax if uncollected together with all penalties charged thereon, *or if the tax has been paid, by ordering a refund of the amount found to have been unlawfully charged and collected.*" (Emphasis supplied.)

A strict reading of the statute reveals BOTA has the authority to refund unlawfully collected taxes. Considering all of the statutes together it is apparent BOTA's authority to act on matters of equalization is additional to, and not exclusive of, its other

powers. This statutory interpretation is well supported by the relevant case law.

In *Atchison, T. & S.F. Rly. Co. v. Drainage District,* 133 Kan. 586, 590, 1 P.2d 253 (1931), it was said:

"Moreover, if the railway property was unfairly assessed the statute provides a remedy which was open to defendant, as to all aggrieved taxpayers (R.S. 79-1404, 79-*1409,* 79-707, 79-*1702)* and that matter furnished no basis for this action either to enjoin the assessment or to recover the tax already paid." (Emphasis supplied.)

Further, in *Beacon Publishing Co. v. Burke,* 143 Kan. 248, 53 P.2d 888 (1936), the county assessor assessed plaintiff's stock in the form of "Escaped Assessments" for the years 1929-1933. Thereafter, plaintiff proceeded before the board of county commissioners sitting as the county board of equalization and protested against the so-called escaped assessments and requested the board to equalize said alleged escaped assessment. Following the board's refusal to take any action to remedy this situation, plaintiff duly applied to the state tax commission (BOTA) sitting as the state board of equalization. This action was taken to employ the powers of the board as enumerated in R.S. 1923, 79-1409 (1933 Supp.) (K.S.A. 79-1409). In the same proceeding, plaintiff requested the state tax commission to take jurisdiction of said cause and award plaintiff relief in accordance with R.S. 1923, 79-1701 and 79-1702. In an opinion written by Mr. Justice Hutchison, the pertinent statutes (*i.e.* 79-1427, 79-*1409* and 79-*1702)* and decisions dealing with the powers of the state tax commission were considered and obedience to the order of the commission was required by mandamus.

It has thus been seen that the powers, duties, and supervisory responsibilities of BOTA are coextensive with the state's entire scheme of taxation. Therefore, the county's argument that the state board of equalization may not concern itself with matters of tax refund is without merit. BOTA is the paramount, lawfully constituted taxing authority in the state (*Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P.2d 147 [1971], *cert. denied* 406 U.S. 967 [1972]) and its powers as enumerated in K.S.A. 74-2439 are not mutually exclusive. Moreover, BOTA is afforded specific statutory authority to order the correction of errors and grant refunds—chapter 79, article 17, Kansas Statutes Annotated.

The county also asserts that BOTA did not have jurisdiction to consider taxpayer's refund claim because taxpayer had elected

its remedy under K.S.A. 79-2005 and was precluded from filing an application with BOTA. The language of K.S.A. 79-2005 is clear. Any taxpayer who wishes to protest taxes must (1) pay the taxes; (2) file with the county treasurer, at the time of payment a written statement stating the grounds of protest; (3) within thirty (30) days thereafter, commence an action in court or file an application with BOTA. Although the county suggests otherwise, it has long been recognized in this jurisdiction that K.S.A. 79-2005 is not the exclusive means of seeking a refund of taxes from BOTA. Indeed, the Kansas Supreme Court, in 1935, recognized that K.S.A. 79-1702 could serve as a substitute for K.S.A. 79-2005. *Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 42 P.2d 936 (1935). In an opinion affirming the district court's decision requiring the county treasurer to comply with an order issued by the state tax commission, the supreme court, considering whether the commission could order a refund of taxes illegally levied and paid, said:

"On this question of law, certain pertinent sections of the tax law will require examination. R.S. 79-1702, in substance, provides that where a taxpayer has a grievance not otherwise remediable he can have redress through the state tax commission, which is given power, among other matters, to order a refund of the amount found to have been unlawfully charged and collected. R.S. 1933 Supp. 79-2005 also directs what preliminary steps a protesting taxpayer shall take to perfect his right to recover taxes illegally exacted. Of what avail would it be for him to conform to these steps if they were not intended by the legislature to lead to their logical fruition?" p. 624.

This rule of law has been supported on several occasions, finding the remedy provided under K.S.A. 79-2005 is not an exclusive remedy. *Panhandle Eastern Pipe Line Co. v. Herren*, 207 Kan. 400, 403, 485 P.2d 156, *modified* 208 Kan. 119, 490 P.2d 416 (1971); 9 Kansas Digest, Taxation § 543 (1971).

Likewise, the county's assertion that taxpayer's failure to file its application for refund within 30 days precluded BOTA from assuming jurisdiction is equally without merit. Nothing in K.S.A. 79-1701 *et seq.* can be construed to set a 30-day time limitation. Additionally, the BOTA hearing was commenced pursuant to K.S.A. 74-2439 and 79-1701 *et seq.* and not 79-2005. Therefore, the statutory time limitation set forth in the latter statute is not applicable to the factual situation presented herein.

In the final analysis, upon considering all the relevant statutes and applicable case law, the court must conclude BOTA had

jurisdiction to consider the equalization and refund issues pre-
sented by the taxpayer in the same proceeding.

D. The BOTA had proper jurisdiction to grant taxpayer a re-
fund of unlawfully assessed taxes pursuant to K.S.A. 79-1702
even though the claim was not formally presented before
the County Board of Equalization.

The county next contends that BOTA did not have jurisdiction
to refund the taxes to taxpayer in accordance with K.S.A. 79-1701
*et seq.* because the claim for refund must have first been pre-
sented to the board of county commissioners for determination.
Before considering the merits of the county's contention, it must
briefly be mentioned that the BOTA decision in this regard was
rendered pursuant to K.S.A. 79-1702 even though taxpayer's
grievance was predicated upon K.S.A. 79-1701a which generally
applies to the Board of County Commissioners. Upon reviewing
the entire record and the order issued by BOTA, it becomes
quite apparent that BOTA relied on the powers conferred by
K.S.A. 79-1702 to refund the disputed taxes.

This issue is basically one of statutory construction in which
both parties have interpreted the respective statutes in a light
most favorable to their respective position. Although the court
finds considerable merit in the arguments advanced by both
sides, it adopts neither approach. On the contrary; a strict inter-
pretation of K.S.A. 79-1702 leads the court to conclude BOTA did
indeed have jurisdiction, irrespective of the county board's con-
sideration of the issue. Once again, K.S.A. 79-1702 provides, in
part:

"If any taxpayer or any municipality or taxing district shall have *a grievance
not remediable under the provisions of K.S.A. 79-1701 or 79-1701a,* or amend-
ments thereto, or which was remediable thereunder and reported to the proper
official or officials within the time prescribed but which has not been remedied
by such official or officials, such grievance may be presented to the state board of
tax appeals. . . . [I]t may direct that the same be remedied . . . *by
ordering a refund* of the amount found to have been unlawfully charged and
collected." (Emphasis supplied.)

The first question to be asked is whether the grievance com-
plained of by the taxpayer is remediable under K.S.A. 79-1701 or
79-1701a. The court must answer this question in the negative. It
is clear that the taxpayer sought relief before BOTA for an error
committed in the "valuation and assessment process" on the part
of the county assessor. Looking over the various "clerical errors"

which are remediable under K.S.A. 79-1701, there is no provision for an error of the type complained of in the present case. Therefore, applying the literal language of the statute (79-1702), the taxpayer did not have a "grievance remediable under the provisions of K.S.A. 79-1701 or 79-1701a." As such, in accordance with K.S.A. 79-1702, BOTA had jurisdiction to consider the grievance without prior county board consideration and it ultimately had the power to order a refund. At this point, the court's analysis of the jurisdictional issue must conclude because proper jurisdiction has been accomplished.

The court is mindful of the fact that BOTA's order of February 3, 1977, contains language which could be construed to indicate that BOTA applied K.S.A. 79-1701 and found a clerical error enumerated within the statute applied to the factual situation presented here. However, BOTA appears to be well aware of its general powers as provided in K.S.A. 74-2439, including K.S.A. 79-1702. This court is not prepared to vacate the order simply because BOTA attempted to pigeonhole the issue presented herein into one of the errors found in 79-1701. On the contrary, the result reached (*i.e.*, finding proper jurisdiction) was the correct one, although the procedure used in reaching the result may have been factually incorrect.

Lest the county believe the court's interpretation of K.S.A. 79-1702 is a unique or novel one, the court can only suggest the party review the following cases. In each instance this statute was applied to seek review before BOTA and the error complained of was not included among those listed in K.S.A. 79-1701. *Thompson v. Chautauqua County Comm'rs,* 147 Kan. 151, 75 P.2d 839 (1938); *Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620; *Beacon Publishing Co. v. Burke,* 143 Kan. 248.

Finally, it must be noted that K.S.A. 79-1702 has been amended to effectively eliminate a taxpayer's use of this statute when concerning errors in valuation and assessment. See K.S.A. 1980 Supp. 79-1702.

II.   The BOTA's order of refund to taxpayer was made on the basis of substantial and competent evidence.

As the record before this court discloses, the taxpayer's appeal to BOTA from the decision of the county board of equalization was filed on June 4, 1976. On August 11, 1976, an evidentiary hearing was held before BOTA to consider the merits of said

equalization appeal. Thereafter, on September 14, 1976, for the first time taxpayer sought to inject the issue of the request for refund of taxes paid under protest. Johnson County opposed consideration of the request for refund in the memorandum of Johnson County in Opposition to Appellant's Motion for Refund served on December 8, 1976. After considering this memorandum and taxpayer's reply memorandum, BOTA made and entered its order in the equalization appeal on February 3, 1977, wherein it concluded, in part:

"14. That this Board does have the power and authority to correct clerical errors as hereinbefore outlined in Paragraph 8. Further, that the record shows substantial differentiation between figures used to establish the 1976 value, the reappraisal having been made, and those figures used to establish the 1975 fair market value. That, therefore, the taxpayer is entitled to relief on this claim of error and that the County has had, and has taken, the opportunity to make its views known as to this Board's authority on this issue. Therefore, the Motion for Refund is sustained."

Further,

"15.  .  .  .   And, that the tax levied upon this property for the year 1975 was erroneously calculated *not having taken into consideration the true and correct square footage of the improvements located upon the property* here in question and, as such, the taxes levied for 1975 ought to be computed based upon those corrected figures as was the 1976 valuation. Any refund due and owing to the taxpayer should then be made or credited to succeeding tax liabilities." (Emphasis supplied.)

Given this set of facts, Johnson County asserts that neither was a claim of any "clerical error" made at the evidentiary hearing on August 11, 1976, nor was evidence supporting such claim presented. Additionally, Johnson County submits BOTA failed to make any finding in the order of February 3, 1977, enumerating the evidence supporting the alleged error. Thus, it is asserted that BOTA's order of February 3, 1977, was not based on substantial competent evidence and should be vacated by this court.

This issue can be readily resolved by resort to the applicable statutes and the record presently before the court. First, the court will concern itself with Johnson County's argument that taxpayer's claim for refund was not presented at the evidentiary hearing on August 11, 1976. Although not expressly stated, the county's argument in this regard is evidently questioning BOTA's ability to consider taxpayer's refund issue when no claim of refund was made at the evidentiary hearing, but was

raised at a later date—September 14, 1976. The court is not directed to any statute, case, or treatise on the subject of administrative law in an effort to determine the proper procedure herein. Nevertheless, the court finds K.S.A. 79-1702 helpful in this regard.

Once again, K.S.A. 79-1702 gives a taxpayer who feels aggrieved by an illegal or unequal assessment the right to appeal to BOTA to have its grievance heard. There is no time limitation imposed by this statute. Thus, the fact that taxpayer in the present case filed its grievance in September, 1976, is of no consequence. K.S.A. 79-1702 further provides that BOTA must be satisfied from competent evidence that a real grievance exists. However, the statute does not condition its application on evidence being supplied only from a previous equalization proceeding.

Johnson County's assertion that no evidence supporting BOTA's refund order was presented is equally without merit. Upon reviewing the entire record, the court is of the opinion that the merits of the refund are more than adequately reflected. Before the county board, the witness for the assessor, Mr. Roger Harte, speaking in the presence of and on behalf of the assessor, stated that because of certain "mechanical and clerical errors" in the assessment of the improvements, the square footage computations of the assessment cards were brought up to date. As a direct result of this information, the county board of equalization ordered a reduction in the assessed valuation by an amount equal to 13%. Relying on this admission of error, coupled with the fact that the county had indeed reduced the subject property's valuation by 13%, BOTA determined that a refund was due and owing to the taxpayer. This result is fully supported in Paragraph 15 of the February 3, 1977, order, which states:

". . . that the tax levied upon this property for the year 1975 was erroneously calculated not having taken into consideration the true and correct square footage of the improvements located upon the property here in question and, as such, the taxes levied for 1975 ought to be computed based upon these corrected figures as was the 1976 valuation."

After reviewing the complete record presented herein, the court is of the opinion that the evidence submitted before BOTA was sufficient to conclude that errors had been made in the calculation of the square footage of the subject improvements. As such,

it was totally proper for BOTA to refund the excessive taxes paid in 1974 and 1975.

. . . .

IV.  The record before the court fails to show that the orders of BOTA in denying taxpayer's appeals from the County Board of Equalization to BOTA were unreasonable, arbitrary or capricious.

In cases 69,248 and 72,082 taxpayer appeals from the orders of BOTA to this court pursuant to K.S.A. 74-2426. As both parties are well aware, this court has ample authority to grant complete relief to a taxpayer who feels aggrieved by reason of discrimination in assessment of property. However, the parties must also be aware that the assessment and valuation of property are administrative functions, not judicial ones. Therefore, this court will not substitute its judgment for that of the assessing authority in the absence of fraud or conduct so oppressive, arbitrary, or capricious as to amount to fraud. *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 436 P.2d 982 (1968). Moreover, in reviewing the decision reached by BOTA in Docket No. 23-76-E, the court is limited to consideration of the evidence submitted before BOTA in reaching its conclusion.

The record before BOTA reflected that The Clines Apartment complex was begun in 1969. At that time, land value was taxed with an improvement assessment added in 1970. Following the contractor's failure to complete the project, the property was subjected to foreclosure proceedings in 1971. A receiver was appointed and the remaining units left uncompleted by the contractor were finished. Thereafter, the improvement assessment was increased for 1972, reduced in 1973, raised in 1974 and this last assessment remained until taxpayer appealed to the Johnson County Board of Equalization contending the property was not being uniformly and equally assessed in accordance with art. 11 sec. 1 of the Kansas Constitution. Upon finding that errors had been made in calculation of square footage of the improvements, the county assessor reappraised the property, and as a result of said reappraisal, recommended a reduction of 13% from the 1976 valuation. By order of the county board made on May 12, 1976, the fair market value was reduced. From that order, the taxpayer properly perfected an appeal to BOTA.

At the evidentiary hearing of August 11, 1976, and thereafter

upon rehearing, taxpayer argued that the facts disclose an additional 10% reduction in the assessed valuation was necessary in order to bring the property in uniformity with comparable properties in the taxing district. Taxpayer's assertion for an additional 10% reduction was based solely upon the taxes levied on comparable properties when compared against the valuation of The Clines Apartments.

Likewise, taxpayer's appeal to this court is premised on the idea that the real estate assessment on The Clines Apartment project is greater than comparable properties in the taxing district in Johnson County. However, as BOTA properly points out, there are numerous factors which must be considered in attempting to establish fair market value and basing the valuation on a simple comparison of the tax levies of "comparable properties" results in an inaccurate calculation. Thus, the court must agree with BOTA that taxpayer failed to present substantial, competent evidence which would support an additional reduction in the fair market value of The Clines.

In the final analysis, taxpayer has failed to provide the court with any evidence presented before BOTA which would tend to support a finding of unreasonableness or arbitrariness on the part of the administrative board. As such, the court must find that taxpayer's appeals from the orders of BOTA as they relate to the equalization and assessment of The Clines should be denied.

In addition to the foregoing, upon the filing of taxpayer's motion to vacate and set aside the order of dismissal in Case No. 49,941 entered August 17, 1976, by the Honorable Buford L. Shankel, and the taxpayer's motion for reassignment of that case to this court, the attorney representing the commissioners in the original case, No. 49,941, desired the opportunity to be heard and to present briefs in opposition to taxpayer's motion. These have been submitted, filed, and reviewed by the court.

The court finds that the defenses asserted by James Bouska, attorney for said commissioners, although eloquently stated on the issues of res judicata, estoppel, and collateral estoppel, have been discussed in the foregoing opinion of the court. In substance, the court has been impressed with and has utilized the meaning and interpretation given to K.S.A. 60-260(b) enlarging time in extenuating or unusual circumstances. The court finds the facts in this case fit that criteria.

## DECISION

After due consideration of the evidence and testimony presented before BOTA as well as the arguments advanced by the parties, and memoranda submitted, the court finds as follows:

1. The dismissal of taxpayer's amended petition in Case No. 49,941 operated as an adjudication on the merits within the meaning of K.S.A. 1982 Supp. 60-241;

2. To avoid manifest injustice, the court finds the decision reached in Case No. 49,941, only as it pertains to the dismissal of taxpayer's amended petition, should be vacated and set aside in accordance with K.S.A. 60-260(b)(6);

3. The Board of Tax Appeals, sitting as the State Board of Equalization, is not precluded from considering a tax refund issue pursuant to K.S.A. 79-1701 et seq.;

4. It was not necessary for taxpayer to present the tax refund issue before the county board prior to seeking relief from BOTA;

5. The BOTA's order of refund to taxpayer was made on the basis of substantial and competent evidence and the court agrees with BOTA that any refund due and owing to taxpayer should be made or credited to succeeding tax liabilities in accordance with the decision rendered in the BOTA order in Case No. 68,767 in the District Court of Johnson County, Kansas;

. . . .

7. The Board of Tax Appeals, in denying taxpayer's appeal from the county board, was not arbitrary, capricious, or unreasonable.

After a careful analysis of the reasons given by the district court in the portions of its memorandum opinion, set out above, we have concluded that the opinion assigns sound and controlling reasons for its order and judgment and effectively answers the questions raised and argued on this appeal. We know of no good reason why this opinion should be burdened with extended discussion and consideration of contentions which have already been correctly disposed of in the trial court's memorandum decision.

We approve the district court's disposition of the case as set forth above. On the issue of res judicata and the trial court's setting aside the order of dismissal in the protest case (No. 49,941), we wish to point out that at the time that Judge Shankel entered his order of dismissal of Capitol Federal's amended

petition on August 17, 1976, the county board of equalization had already entered its administrative decision granting a 13% reduction in the 1976 assessment and the matter was already on appeal to BOTA. At that time, the protest action was in fact subject to the prior determination of the county board of equalization in the equalization proceeding. Hence, the order of the district court setting aside the order of dismissal under K.S.A. 60-260(*b*)(6) was entirely appropriate.

We also wish to emphasize that the decision of the district court in this case entered on April 14, 1982, did not involve an interpretation of the amendments to K.S.A. 79-1701a, K.S.A. 79-2005, and K.S.A. 79-1606 enacted by the 1982 legislature.

The judgment of the district court is affirmed.